```
                    UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF NEW MEXICO
```

In re:
J.R HALE CONTRACTING COMPANY, INC.,

    Debtor.                               Case No. 7-11625-s7

WILLIAM F. DAVIS & ASSOCIATES, P.C,

    Plaintiff,

v.                                           Adversary No. 10-1192 S

MICHAEL J. CAPLAN, Trustee,
UNITED STATES DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE, and
NEW MEXICO DEPARTMENT OF TAXATION AND REVENUE

    Defendants.

## **MEMORANDUM OPINION DENYING JOINT MOTION TO DISMISS**

This is an action to determine the priority of Chapter 11 attorney's fees under 11 U.S.C. §724(b) as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Plaintiff William F. Davis & Associates, P.C. ("Davis") represented Debtor prior to this underlying bankruptcy case's conversion from Chapter 11 to Chapter 7, and is owed $25,127.50 in fees and costs from that representation. However, Debtor is subject to $1,405,311.83 in secured tax claims and does not have sufficient funds to pay both the tax liens as well as Davis' attorney fees. Davis argues that its claim has priority over the tax liens under BAPCPA §724(b). Defendants United States of America on behalf of the Internal Revenue Service and the State of New Mexico, Taxation and Revenue Department

(collectively "Defendants") disagree and have jointly moved to dismiss. For the reasons set forth herein, the Court denies the motion to dismiss.[1]

**Background**

This case was initiated with the filing of a chapter 11 petition by the Debtor on July 5, 2007. It was converted to chapter 7 on February 6, 2009. Davis filed a complaint (doc 1) and an amended complaint (doc 4) seeking the referenced relief based on its services rendered during the chapter 11 phase of the case. Defendants answered (doc 8)[2] and shortly thereafter filed a Joint Motion to Dismiss the Amended Complaint ("Joint Motion")(doc 9). At the request of the Court, Defendants supplemented their Joint Motion (doc 13). Davis objected to the Joint Motion (doc 14), to which Defendants replied (doc 18).[3]

**Effect of BAPCPA §724(b)(2)**

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (K); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

[2] Exemplifying an eminently utilitarian approach, the Trustee has merely asked for directions on how to distribute the funds (doc 8).

[3] Davis generated a minor procedural brouhaha when it served the amended complaint by certified mail rather than merely first class mail. See F.R.B.P. 7004(b)(4) and (6). It then re-served the amended complaint and an alias summons on Defendants by first class mail, and Defendants, in another demonstration of utilitarianism, have ceased their protests on this subject.

2

The parties present opposing views of the meaning of §724(b)(2). The BAPCPA version of the statute reads as follows:

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title ... and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed...
> (2) second, to any holder of a claim of a kind specified in section 507(a)(1)(except that such expenses other than claims for wages, salaries, or commissions that arise after the date of filing of the petition, shall be limited to expenses incurred under chapter 7 of this title, and shall not include expenses incurred under chapter 11 of this title), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;....

11 U.S.C. §724(b)(2) (2006). The Bankruptcy Technical Corrections Act of 2010 ("BTCA"), signed into law on December 22, 2010, during this adversary proceeding, made several additional changes to the language of §724(b)(2). As amended, §724(b)(2) now reads as follows:

> (2) second, to any holder of a claim of a kind specified in section *507(a)(1)(C) or 507(a)(2)*(except that such expenses *under each such section*, other than claims for wages, salaries, or commissions that arise after the date of filing of the petition, shall be limited to expenses incurred under *this chapter*, and shall not include expenses incurred under chapter 11 of this title), *507(a)(1)(A), 507(a)(1)(B),* 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;....

11 U.S.C. §724(b)(2) (2011) (changes italicized).

Davis' fees are §507(a)(2) expenses ("administrative expenses allowed under section 503(b)"). Davis therefore argues

3

that the plain meaning of the BAPCPA version of the statute dictates that its attorney's fees be paid prior to the tax liens.[4] Defendants, on the other hand, argue that the BAPCPA version of the statute was erroneously drafted and is widely recognized as such, and that the BTCA version of the statute is the one the Court ought to apply. Under that interpretation, only chapter 7 administrative expenses (and chapter 11 "wages, slaries and commissions") obtain the benefit of being slotted into the "vacated" position of the subordinated taxes, and thus Davis' chapter 11 fees would be excluded from payment.

More specifically, Defendants argue that because §507(a)(1) deals only with domestic support obligations, it makes no sense that the parenthetical phrase immediately following the citation to that section talks about expenses of chapter 7 and 11 cases. Rather, what Congress sought was to address §503(b)(2) as well, which deals with many of the administrative claims against the estate, and thereby by means of the parenthetical phrase excludes chapter 11 administrative claims[5] from the favored payment treatment. And in fact Congress made this amply clear with the

---

[4] Other than the chapter 7 trustee's expenses and commissions and Davis' fees, there are no claims to be paid under §§507(a)(1)-(7).

[5] To be more accurate, there is in effect an exclusion from the exclusion; whereas chapter 11 administrative expenses for the most part may not (now) be paid from the funds that would otherwise go to pay the tax liens, post-petition wages, salaries and commissions may be paid. §724(b)(2) (parenthetical phrase).

4

BTCA version of the statute. Defendants also cite abundant authority for their position derived from the history of the statutory provisions and from various commentaries.

The conundrum created by Congress' poor drafting is not limited to this statute. Specifically, for example, in <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526 (2004), the United States Supreme Court interpreted §330(a)(1), which had been amended in 1994 to delete payment of debtor's chapter 7 attorney fees as a chapter 7 administrative expense. <u>Id.</u> at 529-530. The problem arose because the previous version of the statute specifically allowed such a payment, and the 1994 legislation rather clearly deleted the words "or to the debtor's attorney" from §330(a)(1) in error (that is, unintentionally). <u>Id.</u> at 530-31. Faced with that dilemma, the court ruled that the statute be interpreted the way it read, not the way it "should have" read. "The starting point in discerning congressional intent is the existing statutory text." <u>Id.</u> at 534 (citing <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438 (1999)). "It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" <u>Lamie</u>, 540 U.S. at 534 (quoting <u>Hartford Underwriters Ins. Co v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000)(further internal quotations omitted)). While "the statute is awkward...that does not make it

5

ambiguous." Id. Thus Lamie requires this Court to interpret the BAPCPA version of the statute literally, and thereby to permit the Davis fees to be paid.

The literal reading of BAPCPA §724(b)(2) is that the parenthetical only applies to §507(a)(1) and not §507(a)(2). Defendant contends that this is an unacceptable interpretation for two reasons: (1) the literal reading is not reasonable and (2) legislative history and secondary sources show that the placement of the parenthetical was clearly a drafting error. The Court will first address the reasonableness of the statute.

Defendants contend that the parenthetical has no meaning if it applies only to §507(a)(1). The parenthetical creates a distinction between "expenses incurred under chapter 7" and "expenses incurred under chapter 11." 11 U.S.C. § 724(b)(2) (2006). Defendants argue that §507(a)(1) covers only domestic support obligations, which are claims and not expenses. Thus, according to Defendants' reading, under the literal reading, the parenthetical has no meaning. There is no distinction it can create, because there are no expenses in §507(a)(1) for it to distinguish between. The parenthetical clearly cannot be intended to refer to domestic support obligations.

The flaw with Defendant's analysis of §724(b)(2), however, is that domestic support obligations are not the only kind of estate obligation referenced in §507(a)(1). 11 U.S.C.

6

§507(a)(1)(C) also includes administrative expenses of the trustee:

> (C) If a trustee is appointed or elected under 701, 702, 703, 1104, 1202 or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2) and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

If the parenthetical in BAPCPA §724(b)(2) is read to apply to §507(a)(1)(C) claims, the text is rather straightforward, since the trustee certainly may incur expenses under chapters 11 and chapter 7, including the "wages, salaries or commissions" mentioned in the parenthetical. 11 U.S.C. §724(b)(2). This meaning is supported by the fact that Congress, in enacting BTCA, left the parenthetical phrase still applicable to a portion of §507(a)(1) – specifically, subsection (a)(1)(C). 11 U.S.C. §724(b)(2) (2011). Thus, pre-BTCA, the §724(b)(2) parenthetical does have a reasonable meaning, limited though that might be: it makes a distinction between §507(a)(1)(C) administrative expenses incurred in chapter 7 and those incurred in chapter 11.

Defendants have marshaled lengthy legislative history and secondary sources that rather clearly show that the placement of the parenthetical was a drafting error, and runs directly contrary to Congress' intention of eliminating the "shocking result" of "extinguish[ing] the tax lien of a city, a prior perfected property right, and ... redistribut[ing] public

7

revenues to a group of Chapter 11 administrative creditors...." Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.), 816 F.2d 238, 248 (6th Cir. 1987) (Merritt, Chief Judge, dissenting). However, given the fact that the BAPCPA version of the statute makes sense as it was written, the Court need not address the legislative history or secondary sources. "The language before us expresses Congress' intent ... with sufficient precision so that reference to legislative history and to pre-Code practice is hardly necessary." U.S. v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989) (ruling that postpetition interest is permitted on nonconsensual oversecured claims).

That being said, the Court concedes that Defendants and their sources are undoubtedly correct in asserting that Congress did not mean, when it passed BAPCPA, to continue to allow chapter 11 professional expenses to be paid from the funds that would otherwise go to a properly perfected property tax lien. BTCA makes that clear in correcting Congress' BAPCPA error, and the commentaries reinforce that conclusion. Had this issue arisen some years earlier, the then prevailing standards for statutory interpretation might well have resulted in a conclusion opposite what the Court rules today. See, e.g., Dewsnup v. Timm, 502 U.S. 410 (1992):

> We conclude that respondents' alternative position, espoused also by the United States, although not without its difficulty, generally is the better of the several approaches. Therefore, we hold that § 506(d)

8

>     does not allow petitioner to "strip down" respondents'
>     lien, because respondents' claim is secured by a lien
>     and has been fully allowed pursuant to § 502. Were we
>     writing on a clean slate, we might be inclined to agree
> with petitioner that the words "allowed secured claim" must take
> the same meaning in § 506(d) as in § 506(a). But, given the
> ambiguity in the text, we are not convinced that Congress
> intended to depart from the pre-Code rule that liens pass through
> bankruptcy unaffected.

Id. at 417. (Footnote omitted.) The Dewsnup Court went on to add the following:

>     When Congress amends the bankruptcy laws, it does not
>     write "on a clean slate." See Emil v. Hanley, 318 U.S.
>     515, 521, 63 S.Ct. 687, 690-691, 87 L.Ed. 954 (1943).
>     Furthermore, this Court has been reluctant to accept
>     arguments that would interpret the Code, however vague
>     the particular language under consideration might be,
>     to effect a major change in pre-Code practice that is
>     not the subject of at least some discussion in the
>     legislative history. See United Savings Assn. of Texas
>     v. Timbers of Inwood Forest Associates, Ltd., 484 U.S.
>     365, 380, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988).
>     See also Pennsylvania Dept. of Public Welfare v.
>     Davenport, 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109
>     L.Ed.2d 588 (1990); United States v. Ron Pair
>     Enterprises, Inc., 489 U.S. 235, 244-245, 109 S.Ct.
>     1026, 1032-1033, 103 L.Ed.2d 290 (1989). Of course,
>     where the language is unambiguous, silence in the
>     legislative history cannot be controlling. But, given
>     the ambiguity here, to attribute to Congress the
>     intention to grant a debtor the broad new remedy
>     against allowed claims to the extent that they become
>     "unsecured" for purposes of § 506(a) without the new
>     remedy's being mentioned somewhere in the Code itself
>     or in the annals of Congress is not plausible, in our
>     view, and is contrary to basic bankruptcy principles.

Id. at 419-420. See also Midlantic National Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 507 (1986), characterized in Ron Pair Enter., Inc., 489 U.S. at 243 as holding that section "554(a), which provides that 'the trustee

9

may abandon any property of the estate that is burdensome to the estate,' does not give a trustee the authority to violate state health and safety laws by abandoning property containing hazardous wastes."

In so ruling, the Court sympathizes with those faced with the difficulty of drafting legislation.  Creating the text of a statute that accurately states the intention of the drafter (to say nothing of actually solving the problem addressed) while avoiding unintended consequences can be devilishly exacting and tedious.  In consequence, courts have developed rules of construction whose general aim is to uphold a statute and discern and implement Congressional intent whenever reasonably possible – that is, to "make it work."  And these rules even apply when the problem arises from fundamental negligence on the part of Congress, such as by hurriedly passing legislation without proofreading it.

But at what point does a court go from the judicial function of interpreting a statute to the legislative function of rewriting a statute, especially when the legislative history upon which a "rewriting" of the statute would be based is rather sketchy.  Lamie illustrates that problem in that the majority found the legislative history to be ambiguous, id. at 538-542, and the concurrence found the legislative history in fact supported the statute as written.  Id. at 542-43.

10

> These uncertainties illustrate the difficulty of relying on legislative history here and the advantage of our determination to rest our holding on the statutory text.

Lamie, at 542. Once a Court begins to depart from the direct meaning of a given text in a search for what Congress intended (or perhaps should have intended), it quickly becomes difficult and even random where to draw the line between mere interpretation and rewriting the statute. In consequence, a less intrusive and more restrained approach, such as that exhibited in Lamie, seems appropriate. That leads to what the Court concedes is an anomalous result in this instance: an interpretation and application of the statute that honors its literal (and reasonable) wording while almost certainly running contrary to what Congress actually intended when it was rewriting the statute. Defendants reasonably will frown at the result, but they do have a remedy: have Congress change the statute, as it in fact has done in this case.

> If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." United States v. Granderson, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us.

Id. at 542.

It is true in this case that, as Defendants emphasize, one

11

of the sponsors of BTCA made clear his view that BTCA merely "correct[ed] these purely technical errors" and "[i]t is important to highlight on the record that this bill does not, and is not intended to, enact any substantive change to the Bankruptcy Code." Cong. Rec. H7158 (daily ed. Sept. 28, 2010) (Statement of Rep. Scott). An after-the-fact (indeed, half a decade after the fact) declaration by a sponsor of BTCA interpreting the statute is not a dependable mechanism for statutory interpretation. More to the point, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 1 Cranch 137, 178 (1803).

The disposition required by the text, that Davis be paid for its work prior to payment of the tax liens, is not clearly absurd, and thus this Court finds that BAPCPA §724(b)(2) did not differentiate between chapter 11 and chapter 7 attorneys fees.

**Retroactivity**

However, Defendants have done Lamie one better: they have in their support BTCA, which in effect is a clear admission by Congress that it got the statute wrong in the BAPCPA version but is also an attempt to fix the problem after the fact. BTCA does not however suffice to change the result in this case.

The amended language makes clear that the parenthetical does not apply to all of §507(a)(1), but was rather only to

12

507(a)(1)(C), and additionally to §507(a)(2). If the 2010 amendments apply retroactively, then Defendants' tax liens have priority over Plaintiff's expense, and Davis will not get paid. Thus, whether the 2010 amendments apply retroactively is a dispositive issue in this proceeding.

The Supreme Court dealt with an analogous situation in Landgraf v. USI Film Products, 511 U.S. 244 (1994):

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect.

Id. at 281. In the instant case, BTCA itself contains neither an effective date, nor any instruction about its application. Pub.L. No. 111-327, Bankruptcy Technical Corrections Act of 2010. Thus, this Court must infer whether the statute has retroactive effect.

Following Landgraf, a statute has retroactive effect when it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed". Landgraf, 511 U.S. at 281.

Applying BTCA would have the effect of "impair[ing] a right a party possessed when he acted" since it would subordinate Davis' claim to the tax liens and thus prevent the claim from

13

being paid.  Landgraf, 511 U.S. at 281.  Thus, applying BTCA would run afoul of the presumption against retroactivity.  As the Supreme Court instructs, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."  Id. (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)).  The language of BTCA cannot be said to "require" retroactivity.  Pub.L. No. 111-327, Bankruptcy Technical Corrections Act of 2010.  The acknowledgment of an error and a command to apply the correcting statute retroactively are obviously two different things; BTCA is effectively the former without being the latter.

    There is precedent in this district for precisely this result.  In In re Meyer, 355 B.R. 837 (Bankr. D.N.M. 2006), this Court ruled, based upon the wording of §§1325(b) and 707(b), as amended by BAPCPA, that over median income chapter 13 debtors may not take charitable contributions into account in computing their monthly plan payment.  As that opinion was being written and issued, Congress amended the statute to change that interpretation, and so the Meyer debtors and the United States Trustee moved the Court to change its decision.  In re Meyer, 357 B.R. 635 (Bankr. D.N.M. 2006).  This Court reviewed the new statute[6] and determined that it did not explicitly call for

---

[6] The legislation was titled the Religious Liberty and Charitable Donation Clarification Act of 2006.

14

retroactive application. Id. at 637. The Court then ruled as follows:

> "Absent manifest injustice or intent to the contrary, the court generally applies the law as it exists when a decision is made." Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.), 798 F.2d 396, 399 n. 2 (10th Cir.1986). In this case, the Court applied the law as it existed at the time of the decision. If Congress wishes to pass or amend a civil law and make it retroactive, it can do that. See, e.g., Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 863 (8th Cir.2002). However, there is a judicial presumption against retroactivity that can only be overcome by a clear expression of congressional intent. Id. The Act contains no language that would make it retroactive. Therefore, there is no ground for reconsideration. If the Act were signed into law and amended to be retroactive, a Motion for Reconsideration might be well taken.
>
> Finally, the Court finds that the Act is an acknowledgment that BAPCPA as originally enacted prevented above-median income debtors from deducting charitable contributions in arriving at their plan payment. Applying the statute as it existed when Debtors filed their petition rather than the way that Congress apparently had intended the statute to read may be harsh. But, "[o]ur unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding." Lamie v. United States Trustee, 540 U.S. 526, 538, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). This Court should not rewrite the statute as Congress may have intended; rather, it must enforce the law as written.

Id.

**Conclusion**

It is frequently remarked that "elections have consequences", and sometimes that is even true. It is perhaps more often true that the passage of legislation has consequences. That is so in the instance of this statute in its BAPCPA form,

15

although at least one of the consequences has been unintended.

For the foregoing reasons, Defendants' Joint Motion to Dismiss should be denied, as the relief Davis requests is properly available. An order in conformity with this memorandum opinion will issue.

James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: August 29, 2011

Copies to:

William F. Davis
Attorney for Plaintiff
6709 Academy NE, Suite A
Albuquerque, NM 87109

James C Jacobsen
Attorney for NM Taxation and Revenue
111 Lomas NW Ste 300
Albuquerque, NM 87102-2368

Elizabeth A. Garcia
Attorney for New Mexico Dept of Workforce Solutions
PO Box 1928 Legal Section
Albuquerque, NM 87103

Manuel Lucero
Assistant US Attorney
PO Box 607
Albuquerque, NM 87103-0607

Michael J. Caplan
Trustee
827 E Santa Fe Ave
Grants, NM 87020-2458